## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| KRISTI MCDAVITT, on behalf of herself behalf and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>     v.<br><br>INTELLIHARTX, LLC,<br><br>     Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Kristi McDavitt ("Plaintiff") brings this Class Action Complaint on behalf of herself, and all others similarly situated, against Defendant Intellihartx, LLC ("ITx" or "Defendant"), alleging as follows based upon information and belief and investigation of counsel, except as to the allegations specifically pertaining to herself, which are based on personal knowledge:

## <u>NATURE OF THE ACTION</u>

1. Business associates of healthcare providers that handle sensitive, personally identifying information ("PII") or protected health information ("PHI") owe a duty to the individuals to whom that data relates. This duty arises because it is foreseeable that the exposure of PII or PHI to unauthorized persons—and especially hackers with nefarious intentions—will result in harm to the affected individuals, including, but not limited to, the invasion of their private health matters.

2. The harm resulting from a data and privacy breach manifests in a number of ways, including identity theft and financial fraud, and the exposure of a person's PII or PHI through a data breach ensures that such person will be at a substantially increased and certainly impending

1

risk of identity theft crimes compared to the rest of the population, potentially for the rest of their lives. Mitigating that risk—to the extent it is even possible to do so—requires individuals to devote significant time and money to closely monitor their credit, financial accounts, health records, and email accounts, and take a number of additional prophylactic measures.

3.     Defendant ITx is a payment and collections service provider for various healthcare providers across the United States ("Customer-Healthcare Providers").

4.     As the business associate of Customer-Healthcare Providers, ITx knowingly obtains, collects, and stores patient PII and PHI. In turn, ITx has a resulting duty to secure, maintain, protect, and safeguard the PII and PHI that it collects and stores against unauthorized access and disclosure through reasonable and adequate data security measures.

5.     Despite ITx's duty to safeguard the patient PII and PHI of its Customer-Healthcare Providers, Defendant's secure file transfer platform was accessed by unauthorized third parties and the patient PII and PHI stored therein was exfiltrated by the unauthorized third parties (the "Data Breach").[1]

6.     Based on the public statements of ITx to date, a wide variety of PII and PHI was implicated in the Data Breach, including but not limited to patient names, addresses, dates of birth, Social Security Numbers, medical billing and insurance information, and medical information such as diagnoses and medication.[2]

7.     As a direct and proximate result of ITx's inadequate data security measures, and its breach of its duty to handle PII and PHI with reasonable care, Plaintiff's and Class Members' PII

---

[1]  *Notice of Third-Party Security Incident* ("*Notice of Data Breach*"), ITx Companies, https://www.itxcompanies.com/noticeoffortradatasecurityincident (last visited July 6, 2023).
[2] *Id.*

and PHI has been accessed by hackers and exposed to an untold number of unauthorized individuals.

8.      Plaintiff and Class Members are now at a significantly increased and certainly impending risk of fraud, identity theft, misappropriation of health insurance benefits, intrusion of their health privacy, and similar forms of criminal mischief, risk which may last for the rest of their lives. Consequently, Plaintiff and Class Members must devote substantially more time, money, and energy to protect themselves, to the extent possible, from these crimes.

9.      Plaintiff, on behalf of herself and the Class as defined herein, brings claims for negligence, breach of fiduciary duty, unjust enrichment, and declaratory judgment, seeking actual and putative damages, with attorneys' fees, costs, and expenses, and appropriate injunctive and declaratory relief.

## **PARTIES**

10.     Plaintiff Kristi McDavitt is and has been, at all relevant times, a resident and citizen of Ohio. Plaintiff McDavitt received a copy of the June 9, 2023 Notice Letter, via U.S. mail, from ITx on or about June 25, 2023.

11.     Plaintiff McDavitt provided her PII and PHI to Defendant in connection with medical services she received from her healthcare provider, and provided that information on the condition that it be maintained as confidential and with the understanding that Defendant would employ reasonable safeguards to protect that information. If Ms. McDavitt had known that Defendant would not adequately protect her PHI and PII, she would not have entrusted Defendant with that information and would have sought the medical services of another provider.

12.     Defendant ITx is a limited liability company organized under the laws of Ohio with a principal place of business located 129 E. Crawford St., Suite 360, Findlay, Ohio 45840.

13.     Upon information and belief, Defendant ITx is a single member limited liability

company.

14.     Upon information and belief, Defendant ITx's sole limited liability member is Philip R. Gower who, at all relevant times, is and has been an adult and is a resident and citizen of the state of Ohio.

15.     Defendant ITx is a citizen of each state in which one of its members is a citizen. As such, Defendant ITx is resident and citizen of the state of Ohio.

16.     The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged here are currently unknown to Plaintiff.

17.     Plaintiff will seek leave of court to amend this Complaint to reflect the true names and capacities of such responsible parties when their identities become known.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are 100 or more members of the proposed class, and at least one member of the proposed class is a citizen of a state different than Defendant.

19.     This Court has personal jurisdiction over ITx because Defendant resides in this District.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this District.

## FACTUAL BACKGROUND

**A.     ITx Collected and Stored Plaintiff's and Class Members' PII and PHI.**

21.     ITx provides revenue cycle management service to its Customer-Healthcare Providers.

22.     Upon information and belief, while administering its healthcare management services to Customer-Healthcare Providers, ITx receives, maintains, and handles PII and PHI from its Customer-Healthcare Providers, which includes, *inter-alia*, patient names, addresses, dates of birth, Social Security Numbers, medical billing and insurance information, and medical information such as diagnoses and medication.

23.     Upon information and belief, because ITx receives, maintains, and handles PII and PHI from its Customer-Healthcare Providers, Defendant qualifies as a business associate within the meaning of 45 C.F.R. § 160.103(3) and has therefore entered into Business Associate Agreements with its Customer-Healthcare Providers, becoming a custodian of patient PHI.

24.     As a business associate of its Customer-Healthcare Providers, ITx is a covered entity under the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. § 1302d, *et seq*.

25.     Plaintiff and Class Members directly or indirectly entrusted ITx with their sensitive and confidential PII and PHI and therefore reasonably expected that Defendant would safeguard their highly sensitive information and keep their PHI confidential.

26.     As a custodian of Plaintiff's and Class Members' PII and PHI, ITx assumed equitable and legal duties to safeguard and keep confidential Plaintiff's and Class Members' highly sensitive information, to only use this information for business purposes, and to only make authorized disclosures.

27.     Despite these duties, ITx failed to implement reasonable data security measures to protect Plaintiff's and Class Members' PII and PHI, and ultimately allowed nefarious third-party hackers to breach its secure file transfer software, compromising Plaintiff's and Class Members' PII and PHI contained therein.

**B.     ITx Knew the Risks of Storing Valuable PII and PHI.**

28.     ITx was well aware that the PHI and PII it collects is highly sensitive and of significant value to those who would use it for wrongful purposes.

29.     ITx also knew that a breach of its systems, and exposure of the information stored therein, would result in the increased risk of identity theft and fraud against the individuals whose PII and PHI was compromised, as well as intrusion into their highly private health information.

30.     These risks are not theoretical; in recent years, numerous high-profile breaches have occurred at business such as Equifax, Facebook, Yahoo, Marriott, Anthem, and many others.

31.     PII has considerable value and constitutes an enticing and well-known target to hackers. Hackers easily can sell stolen data as there has been a "proliferation of open and anonymous cybercrime forums on the Dark Web that serve as a bustling marketplace for such commerce."[3] PHI, in addition to being of a highly personal and private nature, can be used for medical fraud and to submit false medical claims for reimbursement.

32.     The prevalence of data breaches and identity theft has increased dramatically in recent years, accompanied by a parallel and growing economic drain on individuals, businesses, and government entities in the U.S. In 2021, there were 4,145 publicly disclosed data breaches,

---

[3]  Brian Krebs, *The Value of a Hacked Company*, Krebs on Security (July 14, 2016), http://krebsonsecurity.com/2016/07/the-value-of-a-hacked-company/.

exposing 22 billion records. The United States specifically saw a 10% increase in the total number of data breaches.[4]

33.     In tandem with the increase in data breaches, the rate of identity theft complaints has also increased over the past few years. For instance, in 2017, 2.9 million people reported some form of identity fraud compared to 5.7 million people in 2021.[5]

34.     The healthcare industry has become a prime target for threat actors: "High demand for patient information and often-outdated systems are among the nine reasons healthcare is now the biggest target for online attacks."[6]

35.     Additionally, "[h]ospitals store an incredible amount of patient data. Confidential data that's worth a lot of money to hackers who can sell it on easily – making the industry a growing target."[7]

36.     Indeed, cybercriminals seek out PHI at a greater rate than other sources of personal information. In a 2022 report, the healthcare compliance company Protenus found that there were 905 medical data breaches in 2021, leaving over 50 million patient records exposed for 700 of the 2021 incidents. This is an increase from the 758 medical data breaches that Protenus compiled in 2020.[8]

---

[4]*Data Breach Report: 2021 Year End*, Risk Based Security (Feb. 4, 2022), https://www.riskbasedsecurity.com/2022/02/04/data-breach-report-2021-year-end/.

[5] *Insurance Information Institute, Facts + Statistics: Identity theft and cybercrime*, Insurance Information Institute, https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime#Identity%20Theft%20And%20Fraud%20Reports,%202015-2019%20 (last visited July 6, 2023).

[6] *The healthcare industry is at risk*, SwivelSecure https://swivelsecure.com/solutions/healthcare/healthcare-is-the-biggest-target-for-cyberattacks/ (last visited Mar. 28, 2023).

[7] *Id.*

[8] *2022 Breach Barometer*, PROTENUS, https://www.protenus.com/breach-barometer-report (last visited July 6, 2023).

37.     The healthcare sector suffered about 337 breaches in the first half of 2022 alone, according to Fortified Health Security's mid-year report released in July. The percentage of healthcare breaches attributed to malicious activity rose more than 5 percentage points in the first six months of 2022 to account for nearly 80 percent of all reported incidents.[9]

38.     The breadth of data compromised in the Data Breach makes the information particularly valuable to thieves and leaves ITx's Customer-Healthcare Providers' patients especially vulnerable to identity theft, tax fraud, medical fraud, credit and bank fraud, and more.

39.     **Social Security Numbers**—Unlike credit or debit card numbers in a payment card data breach—which can quickly be frozen and reissued in the aftermath of a breach—unique Social Security Numbers cannot be easily replaced. Even when such numbers are replaced, the process of doing so results in a major inconvenience to the subject person, requiring a wholesale review of the person's relationships with government agencies and any number of private companies in order to update the person's accounts with those entities.

40.     The Social Security Administration even warns that the process of replacing a Social Security Number is a difficult one that creates other types of problems, and that it will not be a panacea for the affected person:

> Keep in mind that a new number probably will not solve all your problems. This is because other governmental agencies (such as the IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) likely will have records under your old number. Along with other personal information, credit reporting companies use the number to identify your credit record. So using a new number will not guarantee you a fresh start. This is especially true if your other personal information, such as your name and address, remains the same.

---

[9] Jill McKeon, *Health Sector Suffered 337 Healthcare Data Breaches in First Half of Year*, Cybersecurity News (July 19, 2022), https://healthitsecurity.com/news/health-sector-suffered-337-healthcare-data-breaches-in-first-half-of-year.

> If you receive a new Social Security Number, you should not be able to use the old number anymore.
>
> For some victims of identity theft, a new number actually creates new problems. If the old credit information is not associated with your new number, the absence of any credit history under the new number may make more difficult for you to get credit.[10]

41.     Social Security Numbers allow individuals to apply for credit cards, student loans, mortgages, and other lines of credit—among other services. Often social security numbers can be used to obtain medical goods or services, including prescriptions. They are also used to apply for a host of government benefits. Access to such a wide range of assets makes social security numbers a prime target for cybercriminals and a particularly attractive form of PII to steal and then sell.

42.     **Medical Records**—As indicated by Jim Trainor, former second in command at the FBI's cyber security division: "Medical records are a gold mine for criminals—they can access a patient's name, DOB, Social Security and insurance numbers, and even financial information all in one place. Credit cards can be, say, five dollars or more where PHI records can go from $20 say up to—we've even seen $60 or $70."[11]  A complete identity theft kit that includes health insurance credentials may be worth up to $1,000 on the black market, whereas stolen payment card information sells for about $1.[12]

43.     According to Experian:

> Having your records stolen in a healthcare data breach can be a prescription for financial disaster. If scam artists break into healthcare networks and grab your

---

[10] *Identify Theft and Your Social Security Numbers*, Social Security Admin. (June 2021), https://www.ssa.gov/pubs/EN-05-10064.pdf.

[11] *You Got It, They Want It: Criminals Targeting Your Private Healthcare Data*, *New Ponemon Study Shows*, IDX (May 14, 2015), https://www.idexpertscorp.com/knowledge-center/single/you-got-it-they-want-it-criminals-are-targeting-your-private-healthcare-dat.

[12] *Managing cyber risks in an interconnected world, Key findings from The Global State of Information Security® Survey 2015*, PriceWaterhouseCoopers, https://www.pwc.com/gx/en/consulting-services/information-security-survey/assets/the-global-state-of-information-security-survey-2015.pdf (last visited July 6, 2023).

medical information, they can impersonate you to get medical services, use your data open credit accounts, break into your bank accounts, obtain drugs illegally, and even blackmail you with sensitive personal details.

ID theft victims often have to spend money to fix problems related to having their data stolen, which averages $600 according to the FTC. But security research firm Ponemon Institute found that healthcare identity theft victims spend nearly $13,500 dealing with their hassles, which can include the cost of paying off fraudulent medical bills.

Victims of healthcare data breaches may also find themselves being denied care, coverage or reimbursement by their medical insurers, having their policies canceled or having to pay to reinstate their insurance, along with suffering damage to their credit ratings and scores. In the worst cases, they've been threatened with losing custody of their children, been charged with drug trafficking, found it hard to get hired for a job, or even been fired by their employers.[13]

44.     According to the U.S. Government Accountability Office, which conducted a study regarding data breaches: "[I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the [Dark] Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm."[14]

45.     **Health Insurance Information**—"stolen personal health insurance information can be used by criminals to obtain expensive medical services, devices and prescription medications, as well as to fraudulently acquire government benefits like Medicare or Medicaid."[15]

---

[13] Brian O'Connor, *Healthcare Data Breach: What to Know About them and What to Do After One*, Experian (June 14, 2018), https://www.experian.com/blogs/ask-experian/healthcare-data-breach-what-to-know-about-them-and-what-to-do-after-one/.

[14] U.S. Gov't Accountability Office, Report to Congressional Requesters, Personal Information, June 2007: https://www.gao.gov/new.items/d07737.pdf (last visited July 6, 2023).

[15] Kate O'Flaherty, *Why cyber-Criminals Are Attacking Healthcare -- And How to Stop Them*, Forbes (Oct. 5, 2018), https://www.forbes.com/sites/kateoflahertyuk/2018/10/05/why-cyber-criminals-are-attacking-healthcare-and-how-to-stop-them/?sh=54e8ed1e7f69.

46.     Even if stolen PII or PHI does not include financial or payment card account information, that does not mean there has been no harm, or that the breach does not cause a substantial risk of identity theft. Freshly stolen information can be used with success against victims in specifically targeted efforts to commit identity theft known as social engineering or spear phishing. In these forms of attack, the criminal uses the previously obtained PII and PHI about the individual, such as name, address, email address, and affiliations, to gain trust and increase the likelihood that a victim will be deceived into providing the criminal with additional information.

47.     Based on the value of its Customer-Healthcare Providers' patients' PII and PHI to cybercriminals, ITx certainly knew the foreseeable risk of failing to implement adequate cybersecurity measures.

**C.     ITx Breached its Duty to Protect PII and PHI.**

48.     ITx engaged Fortra LLC ("Fortra") to provide it with secure file transfer software—GoAnywhere MFT. "The GoAnywhere MFT is a web-based and managed file transfer tool designed to help organizations transfer files securely with partners and keep audit logs of who accessed the shared files."[16]

49.     However, the GoAnywhere MFT software contained a major security vulnerability that could be exploited by criminal actors who wished to steal sensitive data contained on the file transfer platform.

50.     In late January and early February 2023, the Clop ransomware group exploited a vulnerability in the GoAnywhere MFT and gained access to and stole data from approximately

---

[16] Sergiu Gatlan, *Exploit released for actively exploited GoAnywhere MFT zero-day*, BleepingComputer (Feb. 6, 2023), https://www.bleepingcomputer.com/news/security/exploit-released-for-actively-exploited-goanywhere-mft-zero-day/.

130 companies, including ITx.[17] Clop was able to breach the GoAnywhere MFT software by successfully exploiting a zero-day vulnerability which allowed the hackers to create unauthorized user accounts and leverage those user accounts to download files contained in the file share platform.[18]

51.　According to Defendant, on or about February 2, 2023, ITx discovered that it had been impacted by a security incident involving the GoAnywhere MFT software during which patient information was exposed.[19]

52.　Upon discovering the Data Breach, ITx conducted an investigation and corresponded with the unauthorized third party to determine the scope of the impacted information.[20] The investigation indicated that sensitive data may have been stolen during the Data Breach.[21]

53.　ITx thereafter conducted a review of the impacted files and confirmed on May 10, 2023, that sensitive information had been compromised during the Data Breach.[22] ITx completed this review on or about May 19, 2023, over four months after the Data Breach had already occurred.[23]

54.　ITx's analysis of the impacted information confirmed that Clop was able to exfiltrate wide swaths of sensitive information relating to its Customer-Healthcare Providers'

---

[17] Steve Alder, *Intellihartx Victim of Fortra GoAnywhere Hack: 490,000 Individuals Affected*, HIPAA Journal (June 12, 2023), https://www.hipaajournal.com/intellihartx-victim-of-fortra-goanywhere-hack-490000-individuals-affected/.
[18] Ravie Lakshmanan, *Fortra Shed light on GoAnywhere MF Zero-Day Exploit used in Ransomware Attacks*, The Hacker News (Apr. 20, 2023), https://thehackernews.com/2023/04/fortra-sheds-light-on-goanyware-mft.html.
[19] *Notice of Data Breach*, *supra* note 1.
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.*

patients, including, but not limited to: patients' names, addresses, dates of birth, Social Security Numbers, diagnoses, medications, insurance information, and billing information.[24]

55.     Clop listed ITx on its leak site, claiming to have exfiltrated information relating to individuals' payment bases for medical services, including date, amount, company name, account balances, as well as individuals' names, phone numbers, addresses, dates of birth, Social Security Numbers, marital status, fields of work, brands of car, and invoices.[25] Clop also claimed to have acquired files related to medical claims, including patients with past due balances and steps Defendant took to collect payment.[26]

56.     On or about June 8, 2023, ITx reported the Data Breach to the Department of Health and Human Services, Office for Civil Rights ("HHS"), indicating that the Data Breach impacted approximately 489,000 individuals.[27]

57.     Despite discovering the Data Breach on or about February 2, 2023, ITx waited over four months to notify impacted patients. Indeed, Plaintiff did not receive a data breach notice from ITx informing her that her PII and PHI had been compromised during the Data Breach until June 2023.

58.     Upon information and belief, Class Members received similar notices dated on or around June 9, 2023, informing them that their PII and/or PHI was exposed during the Data Breach.

59.     The Data Breach occurred as a direct result of ITx's failure to implement and follow basic data security procedures in order to protect individuals' PII and PHI. ITx could have

---

[24] *Id.*

[25] Dissent, *The Fortra/GoAnywhere breach also affected healthcare entities. Here's what we know so far, Part 2*, DataBreaches.net (Apr. 22, 2023), https://www.databreaches.net/the-fortra-goanywhere-breach-also-affected-healthcare-entities-heres-what-we-know-so-far-part-2/.

[26] *Id.*

[27] *Breach Portal*, U.S. Dep't of Health & Human Services Office for Civil Rights, https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf (last visited July 6, 2023).

prevented the Data Breach, or substantially mitigated its severity, if it had properly screened its data vendors or contractors, such as Fortra, for cybersecurity standards as well as conducted cybersecurity audits of its contractors and vendors.

**D.     ITx is Obligated Under HIPAA to Safeguard Personal Information.**

60.     ITx is required by the HIPAA to safeguard patient PHI.

61.     ITx is an entity covered by under HIPAA, which sets minimum federal standards for privacy and security of PHI.

62.     HIPAA requires "compl[iance] with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

63.     Under 45 C.F.R. § 160.103, HIPAA defines "protected health information" or PHI as "individually identifiable health information" that is "transmitted by electronic media"; "[m]aintained in electronic media"; or "[t]ransmitted or maintained in any other form or medium."

64.     Under 45 C.F.R. § 160.103, HIPAA defines "individually identifiable health information" as "a subset of health information, including demographic information collected from an individual" that is (1) "created or received by a health care provider;" (2)"[r]elates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual;" and (3) either (a) "identifies the individual"; or (b) "[w]ith respect to which there is a reasonable basis to believe the information can be used to identify the individual."

65.     HIPAA requires ITx to: (a) ensure the confidentiality, integrity, and availability of all electronic PHI it creates, receives, maintains, or transmits; (b) identify and protect against reasonably anticipated threats to the security or integrity of the electronic PHI; (c) protect against

reasonably anticipated, impermissible uses, or disclosures of the PHI; and (d) ensure compliance by its workforce to satisfy HIPAA's security requirements. 45 C.F.R. § 164.102, *et seq*.

66.     While HIPAA permits business associates to disclose PHI to third parties under certain circumstances, HIPAA does not permit business associates to disclose PHI to cybercriminals nor did Plaintiff or the Class Members consent to the disclosure of their PHI to cybercriminals.

67.     As such, ITx is required under HIPAA to maintain the strictest confidentiality of Plaintiff's and Class Members' PHI that it acquires, receives, and collects, and Defendant is further required to maintain sufficient safeguards to protect that information from being accessed by unauthorized third parties.

68.     Given the application of HIPAA to ITx, and that Plaintiff and Class Members directly or indirectly entrusted their PHI to Defendant in order to receive healthcare services from ITx's Customer-Healthcare Providers, Plaintiff and Class Members reasonably expected that Defendant would safeguard their highly sensitive information and keep their PHI confidential.

**E.     FTC Guidelines Prohibit ITx From Engaging in Unfair or Deceptive Acts or Practices.**

69.     ITx is prohibited by the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45 from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act.

70.     The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[28]

71.     The FTC provided cybersecurity guidelines for businesses, advising that businesses should protect personal customer information, properly dispose of personal information that is no longer needed, encrypt information stored on networks, understand their network's vulnerabilities, and implement policies to correct any security problems.[29]

72.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to private data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[30]

73.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

74.     Despite its obligations, ITx failed to properly implement basic data security practices. Defendant's failure to employ reasonable and appropriate measures to protect against

---

[28] *Start with Security – A Guide for Business*, U.S. FED. TRADE COMM'N (June 2015), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf    (last visited on July 6, 2023).
[29] *Protecting Personal Information: A Guide for Business*, U.S. FED. TRADE COMM'N (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited on July 6, 2023).
[30] *Id*.

unauthorized access to patient PII and PHI constitutes an unfair act of practice prohibited by Section 5 of the FTC Act.

75.     ITx was at all times fully aware of its obligations to protect the PII and PHI of patients because of its position as a business associate, which gave it direct access to reams of patient PII and PHI from its Customer-Healthcare Providers. ITx was also aware of the significant repercussions that would result from its failure to do so.

**F.     Plaintiffs and Class Members Suffered Damages.**

76.     For the reasons mentioned above, ITx's conduct, which allowed the Data Breach to occur, caused Plaintiff, and members of the Class, significant injuries and harm in several ways. Plaintiff and members of the Class must immediately devote time, energy, and money to: (1) closely monitor their medical statements, bills, records, and credit and financial accounts; (2) change login and password information on any sensitive account even more frequently than they already do; (3) more carefully screen and scrutinize phone calls, emails, and other communications to ensure that they are not being targeted in a social engineering or spear phishing attack; and (4) search for suitable identity theft protection and credit monitoring services, and pay to procure them.

77.     Once PII and PHI is exposed, there is virtually no way to ensure that the exposed information has been fully recovered or obtained against future misuse. For this reason, Plaintiff and Class Members will need to maintain these heightened measures for years, and possibly their entire lives as a result of ITx's conduct. Further, the value of Plaintiff and Class Members' PII and PHI has been diminished by its exposure in the Data Breach.

78.     As a result of ITx's failures, Plaintiff and Class Members are also at substantial increased risk of suffering identity theft and fraud or misuse of their PHI.

79.     From a recent study, 28% of consumers affected by a data breach become victims of identity fraud – this is a significant increase from a 2012 study that found only 9.5% of those affected by a breach would be subject to identity fraud. Without a data breach, the likelihood of identify fraud is only about 3%.[31]

80.     With respect to health care breaches, another study found "the majority [70%] of data impacted by healthcare breaches could be leveraged by hackers to commit fraud or identity theft."[32]

81.     "Actors buying and selling PII and PHI from healthcare institutions and providers in underground marketplaces is very common and will almost certainly remain so due to this data's utility in a wide variety of malicious activity ranging from identity theft and financial fraud to crafting of bespoke phishing lures."[33]

82.     The reality is that cybercriminals seek nefarious outcomes from a data breach and "stolen health data can be used to carry out a variety of crimes."[34]

83.     Health information in particular is likely to be used in detrimental ways – by leveraging sensitive personal health details and diagnoses to extort or coerce someone, and serious and long-term identity theft.[35]

84.     "Medical identity theft is a great concern not only because of its rapid growth rate, but because it is the most expensive and time consuming to resolve of all types of identity theft.

---

[31] Stu Sjouwerman, *28 Percent of Data Breaches Lead to Fraud*, KNOWBE4 (Mar. 7, 2023), https://blog.knowbe4.com/bid/252486/28-percent-of-data-breaches-lead-to-fraud.
[32] Jessica David, *70% of Data Involved in Healthcare Breaches Increases Risk of Fraud*, HEALTH IT SEC. (Sept. 25, 2019), https://healthitsecurity.com/news/70-of-data-involved-in-healthcare-breaches-increases-risk-of-fraud.
[33] *Id.*
[34] Andrew Steger, *What Happens to Stolen Healthcare Data?*, HEALTHTECH (Oct. 30, 2019), https://healthtechmagazine.net/article/2019/10/what-happens-stolen-healthcare-data-perfcon.
[35] *Id.*

Additionally, medical identity theft is very difficult to detect which makes this form of fraud extremely dangerous."[36]

85.    Plaintiff and Class Members are also at a continued risk because their information remains in Defendant's systems, which have already been shown to be susceptible to compromise and attack and is subject to further attack so long as ITx fails to undertake the necessary and appropriate security and training measures to protect its patients' PII and PHI.

86.    Plaintiff and Class Members have suffered emotional distress as a result of the Data Breach, the increased risk of identity theft and financial fraud, and the unauthorized exposure of their private medical information to strangers.

## CLASS ACTION ALLEGATIONS

87.    Plaintiff brings this class action on behalf of herself, and all other individuals who are similarly situated, pursuant to Rule 23 of the Federal Rules of Civil Procedure.

88.    Plaintiff seeks to represent a class of persons to be defined as follows:

> All individuals in the United States and its territories whose PII and/or PHI was compromised in the ITx Data Breach which was announced on or about June 8, 2023 (the "Class").

89.    Excluded from the Class are ITx, its subsidiaries and affiliates, officers and directors, any entity in which Defendant has a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

90.    This proposed class definition is based on the information available to Plaintiff at this time. Plaintiff may modify the class definition in an amended pleading or when she moves for

---

[36] *The Potential Damages and Consequences of Medical Identity theft and Healthcare Data Breaches*, EXPERIAN (Apr. 2010), https://www.experian.com/assets/data-breach/white-papers/consequences-medical-id-theft-healthcare.pdf (last visited July 6, 2023).

class certification, as necessary to account for any newly learned or changed facts as the situation develops and discovery gets underway.

91.    **Numerosity:** Plaintiff is informed and believes, and thereon alleges, that there are at minimum, thousands of members of the Class described above. The exact size of the Class and the identities of the individual members are identifiable through ITx's records, including but not limited to the files implicated in the Data Breach, but based on public information, the Class includes approximately 489,000 individuals.

92.    **Commonality:** This action involved questions of law and fact common to the Class. Such common questions include but are not limited to:

a.    Whether ITx had a duty to protect the PII and PHI of Plaintiff and Class Members;

b.    Whether ITx was negligent in collecting and storing Plaintiff's and Class Members' PII and PHI, and breached its duties thereby;

c.    Whether Plaintiff and Class Members are entitled to damages as a result of ITx's wrongful conduct; and

d.    Whether Plaintiff and Class Members are entitled to restitution as a result of ITx's wrongful conduct.

93.    **Typicality:** Plaintiff's claims are typical of the claims of the members of the Class. The claims of the Plaintiff and members of the Class are based on the same legal theories and arise from the same unlawful and willful conduct. Plaintiff and members of the Class were all patients of ITx's Customer-Healthcare Providers, each having their PII and PHI exposed and/or accessed by an unauthorized third party.

94. **Adequacy of Representation:** Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the members of the Class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the Class and has no interests antagonistic to the members of the Class. In addition, Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation. The claims of Plaintiff and the Class Members are substantially identical as explained above.

95. **Superiority:** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, expense, and promote uniform decision-making.

96. **Predominance:** Common questions of law and fact predominate over any questions affecting only individual Class Members. Similar or identical violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. For example, ITx's liability and the fact of damages is common to Plaintiff and each member of the Class. If ITx breached its duty to Plaintiff and Class Members, then Plaintiff and each Class member suffered damages by that conduct.

97. **Injunctive Relief:** ITx has acted and/or refused to act on grounds that apply generally to the Class, making injunctive and/or declaratory relief appropriate with respect to the Class under Fed. Civ. P. 23(b)(2).

98.    **Ascertainability:** Members of the Class are ascertainable. Class membership is defined using objective criteria and Class Members may be readily identified through ITx's books and records.

## COUNT ONE
### Negligence
### (Plaintiff on Behalf of the Class)

99.    Plaintiff restates and realleges the preceding factual allegations set forth above as if fully alleged herein.

100.    Plaintiff brings this claim individually and on behalf of the Class.

101.    ITx owed a duty under common law and statutory law to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting their PII and PHI in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

102.    ITx's duty to use reasonable care arose from several sources, including but not limited to those described below.

103.    ITx has a common law duty to prevent foreseeable harm to others. This duty existed because Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices on the part of ITx. By receiving, maintaining, and handling PII and PHI that is routinely targeted by criminals for unauthorized access, ITx was obligated to act with reasonable care to protect against these foreseeable threats.

104.    ITx's duty also arose from the special relationship that existed between Defendant and Plaintiff and Class Members. ITx holds itself out as a trusted business associate of its Customer-Healthcare Providers, thereby assuming a duty to reasonably protect the information it obtains from its clients. Indeed, ITx, who receives, maintains, collects, and handles PII and PHI

22

from its Customer-Healthcare Providers was in a unique and superior position to protect against the harm suffered by Plaintiff and Class Members as a result of the Data Breach.

105.    Given the nature of ITx's business and the sensitivity and value of the PII and PHI it obtains, ITx should have properly screened its data vendors or contractors, such as Fortra, for cybersecurity standards as well as conducted cybersecurity audits of its contractors and vendors.

106.    In addition, ITx's duty to use reasonable data security measures under HIPAA required ITx to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 154.530(c)(1). Some or all of the information at issue in the Data Breach constitutes "protected health information" within the meaning of HIPAA.

107.    Further, ITx has a duty to employ reasonable data security measures under Section 5 of the FTC Act, which prohibits unfair . . . practices in or affecting commerce," including as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable data security measures to protect sensitive information.

108.    ITx breached the duties owed to Plaintiff and Class Members and was thus negligent. Although the exact methodologies employed by the unauthorized third parties are unknown to Plaintiff at this time, on information and belief, Defendant breached its duties through some combination of the following errors and omissions that allowed the data compromise to occur: (a) mismanaging its system and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information that resulted in the unauthorized access and compromise of PII and PHI; (b) mishandling its data security by failing to assess the sufficiency of their safeguards in place to control these risks; (c) failing to

design and implement information safeguards to control these risks; (d) failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures; (e) failing to evaluate and adjust its information security program in light of the circumstances alleged herein; (f) failing to detect the breach at the time it began or within a reasonable time thereafter; (g) failing to follow its own privacy policies and practices published to their patients; and (h) failing to adequately train and supervise employees and third party vendors with access or credentials to systems and databases containing sensitive PII or PHI.

109.    But for ITx's wrongful and negligent breach of their duties owed to Plaintiff and Class Members, their PII and PHI would not have been compromised.

110.    As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered injuries, including:

    a.    Theft of their PII and/or PHI;

    b.    Costs associated with the detection and prevention of identity theft and unauthorized use of the financial accounts;

    c.    Costs associated with purchasing credit monitoring and identity theft protection services;

    d.    Lowered credit scores resulting from credit inquiries following fraudulent activities;

    e.    Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach – including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and

24

identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

f.    The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their PII and/or PHI being placed in the hands of criminals;

g.    Damages to and diminution in value of their PII and PHI entrusted, directly or indirectly, to Defendant with the mutual understanding that Defendant would safeguard Plaintiff's and Class Members' data against theft and not allow access and misuse of their data by others;

h.    Continued risk of exposure to hackers and thieves of their PII and/or PHI, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' data; and

i.    Emotional distress from the unauthorized disclosure of PII and PHI to strangers who likely have nefarious intentions and now have prime opportunities to commit identity theft, fraud, and other types of attacks on Plaintiff and Class Members.

111.    As a direct and proximate result of ITx's negligence, Plaintiff and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

**COUNT TWO**
**Breach of Fiduciary Duty**
**(Plaintiff on Behalf of the Class)**

112.    Plaintiff restates and realleges the preceding factual allegations set forth above as if fully alleged herein.

113.    Plaintiff brings this claim individually and on behalf of the Class.

114.    Plaintiffs and Class Members have an interest, both equitable and legal, in the PII and PHI about them that was conveyed to, collected by, and maintained by ITx and was ultimately accessed or compromised in the Data Breach.

115.    As a business associate of its Customer-Healthcare Providers, and as a result of its acceptance and storage of the PII and PHI its clients, ITx has a fiduciary duty to Plaintiff and Class Members. In light of this fiduciary relationship, ITx must act primarily for the benefit of its clients' patients, which includes safeguarding and protecting Plaintiff's and Class Members' PII and PHI, even in the absence of direct privity between them.

116.    Because of that fiduciary duty, Plaintiff and Class Members either directly or indirectly gave PII and PHI in confidence, believing that ITx would protect that information. Plaintiff and Class Members were entitled to expect their information would remain confidential while in ITx's possession and Plaintiffs and Class Members would not have directly or indirectly have ITx with this information had they known it would not be adequately protected.

117.    ITx has a fiduciary duty to act for the benefit of Plaintiffs and Class Members upon matters within the scope of their relationship, requiring ITx to exercise the utmost care in safeguarding and protecting PII and PHI in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

118.    Plaintiff and Class Members did not consent to nor authorize ITx to release or disclose their PII and PHI to unknown criminal actors.

119.    ITx breached its fiduciary duties owed to Plaintiff and Class Members by, among other things: (a) mismanaging its system and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information that resulted in the unauthorized access and compromise of PII and PHI; (b) mishandling its data security by failing to assess the sufficiency of its safeguards in place to control these risks; (c) failing to design and implement information safeguards to control these risks; (d) failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures; (e) failing to evaluate and adjust its information security program in light of the circumstances alleged herein; (f) failing to detect the breach at the time it began or within a reasonable time thereafter; (g) failing to follow its own privacy policies and practices published to its patients; and (h) failing to adequately train and supervise employees and third party vendors with access or credentials to systems and databases containing sensitive PII or PHI.

120.    But for ITx's wrongful breach of its fiduciary duties owed to Plaintiff and Class Members, their PII and PHI would not have been compromised.

121.    As a direct and proximate result of ITx's breach of fiduciary duties, Plaintiff and Class Members have suffered injuries, including:

    a.    Theft of their PII and/or PHI;

    b.    Costs associated with the detection and prevention of identity theft and unauthorized use of the financial accounts;

    c.    Costs associated with purchasing credit monitoring and identity theft protection services;

d.    Lowered credit scores resulting from credit inquiries following fraudulent activities;

e.    Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach – including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

f.    The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their PII and/or PHI being placed in the hands of criminals;

g.    Damages to and diminution in value of their PII and PHI entrusted, directly or indirectly, to Defendant with the mutual understanding that Defendant would safeguard Plaintiff's and Class Members' data against theft and not allow access and misuse of their data by others;

h.    Continued risk of exposure to hackers and thieves of their PII and/or PHI, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' data; and

i.    Emotional distress from the unauthorized disclosure of PII and PHI to strangers who likely have nefarious intentions and now have prime opportunities to commit identity theft, fraud, and other types of attacks on Plaintiff and Class Members.

122.     As a direct and proximate result of ITx's breach of its fiduciary duties, Plaintiff and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

## COUNT THREE
### Unjust Enrichment
### (Plaintiff on Behalf of the Class)

123.     Plaintiff restates and realleges the preceding factual allegations set forth above as if fully alleged herein.

124.     Plaintiff brings this claim individually and on behalf of the Class.

125.     Plaintiff and Class Members have an interest, both equitable and legal, in the PII and PHI about them that was conveyed to, collected by, and maintained by ITx and that was ultimately accessed or compromised in the Data Breach.

126.     Plaintiffs and Class Members conferred a monetary benefit upon ITx in the form of monies paid for healthcare services or other services. ITx's business model would not exist save for the need to ensure the security of Plaintiffs' and Class Members' PII and PHI in order to provide revenue cycle management services to its Customer-Healthcare Providers.

127.     The relationship between ITx and Plaintiff and Class Members is not attenuated, as Plaintiff and Class Members had a reasonable expectation that the security of their PII and PHI would be maintained when they provided their information to ITx's Customer-Healthcare Providers.

128.     ITx accepted or had knowledge of the benefits conferred upon it by Plaintiff and Class Members. Upon information and belief, this financial benefit was, in part, conferred, when ITx was paid by its Customer-Healthcare Providers to use Plaintiff's and Class Members PII and

PHI to provide revenue cycle management services. ITx also benefited from the receipt of Plaintiff's and Class Members' PII and PHI.

129. ITx also understood and appreciated that the PII and PHI pertaining to Plaintiff and Class Members was private and confidential and its value depended upon ITx maintaining the privacy and confidentiality of that information.

130. In particular, ITx enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' PII and PHI. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to increase its own profits at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of ITx's decision to prioritize its own profits over the requisite security.

131. ITx failed to secure Plaintiff's and Class Members' PII and PHI and, therefore, did not provide full compensation for the benefit Plaintiff and Class Members provided.

132. Defendant acquired the PII and PHI through inequitable means in that they failed to disclose the inadequate security practices previously alleged.

133. Under the principles of equity and good conscience, ITx should not be permitted to retain the money belonging to Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures that are mandated by its common law and statutory duties.

134. But for ITx's willingness to commit to properly and safely collect, maintain and security PII and PHI, such information would not have been transferred to and entrusted to ITx.

Further, if ITx had disclosed that its security measures were inadequate, ITx would not have gained the trust of its Customer-Healthcare Providers.

135.    ITx's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the collection, maintenance, and inadequate security of Plaintiff's and Class Members' PII and PHI, while at the same time failing to securely maintain that information from unauthorized access and compromise.

136.    Plaintiff and Class Members have no adequate remedy at law.

137.    As a direct and proximate result of ITx's wrongful conduct, Plaintiff and Class Members have sustained injuries, including, but not limited to:

a.    Theft of their PII and/or PHI;

b.    Costs associated with purchasing credit monitoring and identity theft protection services;

c.    Costs associated with the detection and prevention of identity theft and unauthorized use of their PII and PHI;

d.    Lowered credit scores resulting from credit inquiries following fraudulent activities;

e.    Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach—including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts;

f.    The imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their PII and/or PHI being placed in the hands of criminals;

g.    Damages to and diminution in value of their PII and PHI entrusted, directly or indirectly, to Defendant with the mutual understanding that Defendant would safeguard Plaintiff's and Class Members' data against theft and not allow access and misuse of their data by others;

h.    Continued risk of exposure to hackers and thieves of their PII and/or PHI, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' data; and

i.    Emotional distress from the unauthorized disclosure of PII and PHI to strangers who likely have nefarious intentions and now have prime opportunities to commit identity theft, fraud, and other types of attacks on Plaintiff and Class Members.

138.    As a direct and proximate result of ITx's wrongful conduct, Plaintiff and Class Members have suffered damages and will continue to suffer other forms of injury and/or harm.

139.    ITx should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that it unjustly received from them. In the alternative, Defendant should be compelled to refund the amounts that Plaintiff and Class Members overpaid for Defendant's services.

**COUNT FOUR**
**Declaratory Judgment**
**(Plaintiff on Behalf of the Class)**

140.    Plaintiff restates and realleges all preceding allegations above as if fully set forth herein.

141.    Plaintiff brings this claim individually and on behalf of the Class.

142.    Under the Declaratory Judgment Act, 28 U.S.C. §§2201, *et. seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

143.    An actual controversy has arisen in the wake of the Data Breach regarding Plaintiff's and Class Members' PII and PHI and whether ITx is currently maintaining data security measures adequate to protect Plaintiff and Class Members from further data breaches that compromise their PII and PHI. Plaintiff alleges that ITx's data security measures remain inadequate. Furthermore, Plaintiff continues to suffer injury as a result of the compromise of her PII and PHI and remains at imminent risk that further compromises of her PII and/or PHI will occur in the future.

144.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a.    ITx owed a legal duty to secure patients' PII and PHI under the common law, Section 5 of the FTC Act, and HIPAA; and

b.    ITx breached and continues to breach this legal duty by failing to employ reasonable measures to secure consumers' PII and PHI.

33

145.    This Court also should issue corresponding prospective injunctive relief requiring Defendants to employ adequate security protocols consistent with law and industry standards to protect patients' PII and PHI.

146.    If an injunction is not issued, Plaintiff and Class Members will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at ITx. The risk of another such breach is real, immediate, and substantial. If another breach at ITx occurs, Plaintiff will not have an adequate remedy at law because many of the resulting injuries are not readily quantified, and they will be forced to bring multiple lawsuits to rectify the same conduct.

147.    The hardship to Plaintiff and Class Members if an injunction is not issued exceeds the hardship to Defendant if an injunction is issued. Plaintiff will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and ITx has a pre-existing legal obligation to employ such measures.

148.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach at ITx, thus eliminating the additional injuries that would result to Plaintiff, Class Members, and patients whose confidential information would be further compromised.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all other similarly situated, prays for relief as follows:

A.    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

B.  For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

C.  For damages in an amount to be determined by the trier of fact;

D.  For an order of restitution and all other forms of equitable monetary relief;

E.  Declaratory and injunctive relief as described herein;

F.  Awarding Plaintiff's reasonable attorneys' fees, costs, and expenses;

G.  Awarding pre- and post-judgment interest on any amounts awarded; and

H.  Awarding such other and further relief as may be just and proper.

## JURY TRIAL DEMANDED

A jury trial is demanded on all claims so triable.

Dated: August 1, 2023                    Respectfully submitted,

*/s/ Gary F. Lynch*
Gary F. Lynch (*pro hac vice* forthcoming)
Nicholas A. Colella (*pro hac vice* forthcoming)
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
Facsimile: (412) 231-0246
gary@lcllp.com
nickc@lcllp.com

Jennifer S. Czeisler (*pro hac vice* forthcoming)
**STERLINGTON PLLC**
One World Trade Center
85th Floor
New York, New York 10007
Telephone: (212) 433-2993
jennifer@sterlingtonlaw.com

*Attorneys for Plaintiff*